## Dormont Borough *v.* West Liberty Street Railway Company, Appellant.

*Street railways—Boroughs—License fees—Inspection of poles.*

Where a borough fixes a license fee for the inspection of the poles of a street railway at 50 cents per pole, and the Common Pleas reduces it to 25 cents, the appellate court will permit the order of the court below to stand, where it appears that the poles were of iron, that they carried a powerful current of electricity, that the street commissioner of the borough actually inspected each pole every day, and that the commissioner was paid a substantial compensation for this service.

Argued May 4, 1916. Appeal, No. 3, April T., 1916, by defendant, from order of C. P. Allegheny Co., July T., 1914, No. 1613, fixing amount of license fees in case of Dormont Borough v. West Liberty Street Railway Company and Pittsburgh Railways Company. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Petition to determine license fees under Act of July 26, 1913, P. L. 1371. Before SHAFER, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order of the court.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellants, cited: Delaware & Atl. Tel. & Tel. Co.'s Petition, 224 Pa. 55; Nanticoke Boro. v. Bell Tel. Co., 47 Pa. Superior Ct. 184; Monessen Boro. v. Cent. D. & P. T. Co., 51 Pa. Superior Ct. 452; Consolidated Tel. Companies of Penna. v. City of Easton, 16 Dist. Rep. 887; Postal Tel. Cable Co.'s Petition, 17 Dist. Rep. 1085; Punxsutawney Borough v. Western Union Tel. Co., 18 Dist. Rep. 308.

*Hugh M. Stilley,* for appellee.

OPINION BY TREXLER, J., October 9, 1916:

The lower court fixed 25 cents per annum as a proper license fee to be collected for the inspection and regulation of the poles and wires of defendant company as provided by the Act of April 17, 1905, P. L. 183, amended by the Act of July 26, 1913, P. L. 1371. Under said act the amount of the fee is to be such as will properly compensate the municipality for the necessary costs for the services performed or to be performed by it for the inspection and regulation of the poles and wires. The ordinance of the borough fixed the fee at 50 cents. The court reduced it to 25 cents. We are asked further to reduce it and ten cents is suggested as the proper figure.

We have a number of cases in which the fees for the inspection and regulation of telephone and telegraph poles and wires under the police powers have been fixed at fifty cents per pole. There the current conveyed is comparatively harmless but in the case before us the poles carried wires charged with electric current of high power. If danger is to be apprehended from a breaking of such

wires, or a change in their position relative to other objects, there is a different phase of the matter presented.

In the Borough of Dormont, the defendant company has 66 poles. The sum fixed by the court per pole in the aggregate amounted to $16.50 per year. The testimony submitted by the company showed that it inspected its wires and poles once a week, that it protected the wires with a devise known as a circuit breaker which prevented the passage of the current if the wire was broken and stopped the car in that particular section of the road. This would not happen invariably but only under certain conditions. The poles were iron and the company claims were not subject to deterioration in the same way as wooden poles. The street commissioner of the borough testified that he made an inspection of these poles and wires once a day and that it took him an hour each day to inspect them on West Liberty avenue where defendant's road was located. His salary was $100 per month and there were 130 poles on the avenue, 66 belonging to defendant. At 25 cents per pole, there would be a result in fees of $32.50. This would pay for 10 days or 90 hours and spread over a year would amount to 15 minutes per day. This would be much less than the actual inspection given by the borough as the street commissioner testified that it required him an hour to inspect the poles. Of course, the matter need not be determined by a mathematical exactness. Various elements enter into the question. The necessity for the inspection must appear. The providing for inspection by the borough must not merely be an excuse for collecting the tax for municipal purposes. The dangerous character of the current conveyed may afford some reason for frequent inspection. The cost of the services is the central and controlling thought in the mind of the court in the determination of the question. Each case must be determined upon its own facts: Monessen Bor. v. Cent. D. T. Co., 51 Pa. Superior Ct. 454. Although the company has exercised the highest degree of care by way of inspection and main-

tenance, the duty and power of the borough to exercise police supervision still remains: New York & Penn T. & T. Co. v. Coudersport Boro., 49 Pa. Superior Ct. 46.

We think the finding of the lower court that 25 cents is a reasonable fee is fully warranted by the testimony in the case.

The decree of the court below is affirmed and the appeal dismissed at the cost of the appellant.